Receipt number 9998-4166135

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED

SEP 5 2017

U.S. COURT OF
FEDERAL CLAIMS

| | | |
|---|---|---|
| MATTHEW and GABRIELA SALO,<br>on behalf of themselves<br>and all other similarly situated<br>persons and entities,<br><br>   PLAINTIFFS,<br><br>v.<br><br>UNITED STATES OF AMERICA through<br>UNITED STATES ARMY CORPS OF<br>ENGINEERS,<br><br>   DEFENDANTS. | § § § § § § § § § § § § § § | CAUSE NO. ___17-1194 L___ |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Matthew and Gabriella Salo, on behalf of themselves and all similarly situated persons and entities (the "Class Members"), bring this suit against the United States through the Army Corps of Engineers seeking just compensation from the United States' use of their property during and after Hurricane Harvey.

## PARTIES

1.      Plaintiffs Matthew Salo and Gabriela Salo are a military family. Lt. Salo served in the Texas Army National Guard and received the Distinguished Flying Cross and Bronze Star for his service as a pilot of Apache Helicopters in Operation Iraqi Freedom. They purchased their home at 231 Faust Lane, Houston, TX 77024 in January 2017 and owned the home in fee simple at the time of the taking involved here. The Salos are currently residents of Texas, but can no longer reside at 231 Faust Lane.

2.      Defendant is the United States of America through the United States Army Corps of Engineers, an agency of the United States of America.

## JURISDICTION AND VENUE

3.      This action arises under the Fifth Amendment to the Constitution of the United States of America. Plaintiffs, on behalf of themselves and the Class Members, seek just compensation in excess of the jurisdictional minimum of $10,000 required to bring suit in this Court by 28 U.S.C. § 1491(a)(1). Jurisdiction and venue are therefore proper in this Court.

## THE CLAIM

4.      The United States Army Corps of Engineers owns and operates the Addicks and Barker reservoirs, which were built Houston, Texas in the 1940s to prevent flooding of downtown Houston and the Houston Ship Channel.

5.      On August 25, 2017 Hurricane Harvey made landfall as a Category 4 Hurricane settling in the lower Texas gulf coast and spilling massive amounts of rainfall throughout southeast Texas, including in Houston and the surrounding communities.

6.      In the early morning hours of August 28, 2017, the United States Army Corps of Engineers determined that the Addicks and Barker dams risked structural failure or uncontrolled releases as a consequence of the immense rainfall. The Corps of Engineers therefore made the decision to initiate controlled storm water releases from the Addicks and Barker reservoirs, announcing the next day that "The Corps started water releases from Addicks and Barker dams at 1am due to dramatically increased water levels."

7.      The Plaintiffs had, by and large escaped the initial landfall of Hurricane Harvey with minimal or no damage and most had no flooding damage of any kind in their homes or businesses. The Corps knew that its decision would cause flooding in a

vast swath of the Houston area near Buffalo Bayou for several reasons. First, the Corps' website explained that the water flow from the releases would by itself constitute about 20% of the water flowing through the Buffalo Bayou. The Bayou was already at flood stage and this water had nowhere to go but out and into the homes, schools and businesses of the Plaintiffs and Class Members. On its Twitter Page (@USACEGALVESTON), the Corps acknowledged that flooding was imminent, warning the nearby residential and commercial areas that the "Controlled releases may cause moderate flooding." As Harris County flood official Jeff Linder would later put it at one of his 4:00 p.m. briefings, "the water has been rising today along the bayou due to the continued releases from Addicks reservoir."

8.      In addition, the Corps saw the immediate result of releases beginning on August 28, 2017 (i.e., that they had flooded the Plaintiffs' homes, businesses and properties), but, for the good of the public, continued to release waters from the Addicks and Barker reservoirs into the Plaintiffs' and Class Members' communities. The connection between these controlled releases and the Plaintiffs' flooding was so clear that the Corps and other officials warned that the flooding would continue in many homes due to the releases for ten to fourteen days.

9.      Many of the homes, schools, and businesses that were flooded by the Corps are outside of even the 500-year flood plain.  As a result, most of the Plaintiffs have no insurance to cover their losses. In fact, the Corps admitted in a press conference on September 4, 2017, that "we had never inundated anyone's homes prior to this year."

10.     In sum, the Corps made the decision to use the Plaintiffs' properties to hold floodwaters while controlled releases occurred, understanding that homeowners, schools, businesses and others would lose the use of their properties for a period of time as a result. On September 1, 2017, the Corps posted on its Facebook page that it expected "current reservoir discharge rates [to] continue for the next 10-15 days." Ultimately the City of Houston forced many Plaintiffs to evacuate their homes because of the continued risk associated with living in the recently flooded properties.

11.     The area flooded by the release of the Addicks and Barker, where the Plaintiffs and Class Members owned property, extended from at least Dairy Ashford road on the west to Piney Point neighborhood to the east and as far as Interstate 10 to the north. It not currently possible to identify each and every property impacted because many of the areas remain inaccessible as a result of flooding. At a minimum, however, warnings were issued to neighborhoods and it is believed that one or more properties was flooded in the Arcadia, Arcadia Court, Cinco Ranch Equestrian Village, Estates of Baker Lane, Flagstone Estates, Green Trails, Green Trails Crossing, Green Trails Forest, Green Trails Oaks, Green Trails Park, Green Trails Village, Heatherwood Park, Kelliwood, Kelliwood Enclave, Kelliwood Gardens, Kalliwood in Nottingham Country, Kalliwood Lakes, Kelliwood Place, Kelliwood Trails, Kingsland Acres, Kingsland Estates, Krystal Lakes Estates, Lakeforest of Kelliwood, Lakes of Buckingham, Lakes of Buckingham Kelliwood, Memorial Parkway, Memorial Parkway Village, Nottingham Country, Oak Park Trails, Parklake Village, Parkview at Barker Cypress, Ricefield Village, Stonelodge, University West Park, West Side Forest, Westgreen Park, Willow Park Greens, Windsor Park Estates, Windsor Park Lakes, Barker Addition, Barker

Crossing Barkers Branch, Bear Creek Central, Bear Creek Estates, Bear Creek Farms, Bear Creek Trails, Bear Creek Village, Bear Creek West, Bradford Colony, Clay Hill Park, Clay Hills Plaza, Clay Meadows, Concord Bridge, Concord Bridge North, Concord Colony, Cypress Parke, Eldridge Park, Estates at Cullen Park, Feste Park at Bear Creek Village, Forest Village, Georgetown Colony, Glencairn, Glencairn Park, Glencairn South, Hearthstone Place, Jamestown Colony, Lake Harbor, Lakes of Eldridge North, Lakes of Pine Forest, Lakes on Eldridge, Lakes on Eldridge North, Landing at Park Harbor, Langham Creek Colony, Mayde Creek Farms, Park Harbor, Park Harbor Estates, Park Place Center, Pine Forest Green, Pine Forest Landing, Pine Forest Village, Ranch at Barker Cypress, Savannah Estates, Timber Creek Place, Twin Lakes, Villages at Lakepoint, Westlake, Westlake Forest, Westlake Place, Yorktown Crossing, and many other neighborhoods.

12.    As a result of the United States' intentional decision to release the storm water in light of the hazard it was deemed to pose, the Plaintiffs' and Class Members were flooded in order to reduce the risk to the retention structures, as well as Houston and the surrounding areas. The destruction of, substantial damage to and devaluation of residences, businesses, along with their contents and other property, resulted from the Defendants' intentional decision to use the land. The United States constitution requires just compensation, which Plaintiffs and the Class Members have not received.

13.    Plaintiffs believe that to be justly compensated, those affected by Corps-induced flooding should receive:

> a.    The fair market rental value of their property for the time they will be dispossessed from it;

    b.      The fair market value of the property taken;

    c.      The actual cost to repair and replace the property taken or made useless by the flooding; and

    d.      The future lost market value in their properties due to the flooding. Once a property is deemed "flood prone" it is perceived negatively in the market and suffers an economic stigma which reduces its value. Purchasers of the Plaintiffs' property will have to take into account the possibility or probability that should flooding occur in the future that Plaintiffs' properties might again be sacrificed and flooded.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Rules of the Court of Federal Claims. Plaintiffs seeks to represent a class consisting of:

> All persons and entities holding an interest in real or personal property that was damaged as a consequence of the Defendants' decision to initiate releases from the Addicks and Barker reservoirs in Houston, Texas beginning on or about August 28, 2017.

15.    This action is properly brought as a class action because the Class Members are so numerous that joinder of all of them is impracticable. The exact number and identity of every Class Member is unknown, but according to the Defendants, it includes at least 4,000 member property owners and may include as many as 10,000 or more such owners.

16.    This action is also properly brought as a class action because certain common questions of law and fact exist as to all Class Members that predominate over any questions solely affecting individual Class Members, including (a) whether the

flooding of the Plaintiffs' and Class Members property was intentional, (b) whether the damage suffered by Plaintiffs and Class Members was the natural and probable consequence of the Government's actions, (c) whether the Government violated the Takings Clause by opening the Addicks and Barker and flooding the property without just compensation, and (d) the proper measure of damages.

17.     The Class Members' interest will be fairly and adequately protected by Plaintiffs whose interests are consistent with those of the Class Members. Plaintiffs and the Class Members are represented by experience and able counsel knowledgeable about complex commercial litigation. Plaintiffs' interests are not antagonistic to or in conflict with the interests they seek to represent. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

18.     Absent a class action, the resulting multiplicity of lawsuits would cause undue hardship and expense both for the Court and the litigants, as well as create the risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated persons and entities, thereby substantially impeding their ability to protect their interests and establishing incompatible standards of conduct for the United States.

19.     Class certification is therefore appropriate under Rule 23(b)(2) of the Rules of the United States Court of Federal Claims because Defendants have acted or refused to act on grounds generally applicable to the Class.

20.     Class certification is also appropriate under Rule 23(b)(3) of the Rules of the United States Court of Federal Claims because the common questions of law or fact

predominate over questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRAYER

21.    Plaintiffs plead for just compensation required by the Fifth Amendment, as set forth above, attorneys' fees, litigation expenses, and costs, along with any such further relief to which Plaintiffs are justly entitled. Plaintiffs request this action be certified as a class action, Plaintiffs be designated class represented, and Plaintiffs' attorney be appointed as class counsel.

Respectfully submitted,

Thomas M. Fulkerson
Texas State Bar No. 07513500
Email: tfulkerson@fulkersonlotz.com
FULKERSON LOTZ LLP
4511 Yoakum Blvd., Suite 200
Houston, Texas 77054
Telephone:   713.654.5800
Facsimile:    713.654.5801

**ATTORNEY FOR PLAINTIFFS
MATTHEW AND GABRIELA SALO**

*Pro Hac Vice Motion and Application for
Admission Pending*

OF COUNSEL:
Ethan G. Gibson
Texas State Bar No. 27073131
Email: egibson@fulkersonlotz.com
Nick Brown
Texas State Bar No. 24092181
Email: nbrown@fulkersonlotz.com
FULKERSON LOTZ LLP
4511 Yoakum Blvd., Suite 200
Houston, Texas 77006-5821

*Pro Hac Vice Motion and Application for Admission Pending*

Douglas H. Elliott
Texas Bar No. 06535900
Email: doug@elliotiplaw.com
THE ELLIOTT LAW FIRM, PLLC
Telephone:   832.485.3560
Fascimile:    832.485.3511
6750 West Loop South, Suite 995
Bellaire, Texas 77401

*Admitted to Court of Federal Claims: February 21, 1997*